Sankey v. Cook.

## SANKEY V. COOK.

1. **Payment:** APPLICATION: PRESUMPTION. Defendant's testator entered into a written contract to pay plaintiff twenty-seven hundred dollars. While this was in force the testator paid plaintiff certain sums which the evidence shows were payments upon a twenty-seven-hundred-dollar contract. Plaintiff filed a twenty-seven-hundred-dollar contract against the estate, with the payments referred to endorsed thereon. The identity of the instrument was not disputed, and there was no pretense of any other twenty-seven-hundred-dollar contract between the parties. *Held* that it was as certain as practical affairs among men can be, that the instrument filed was the one on which the payments were made, and that the mere possibility that it might not be was no ground for a refusal to find that it was.

2. **Contract:** ACCEPTANCE OF PROPOSITION: EVIDENCE. Where defendant's testator made a written agreement with plaintiff to take certain property off his hands at a named price, in case plaintiff so elected,—the price to be paid in installments as therein set forth, *held* that the making of payments upon the contract, together with the correspondence which recognized the obligation to pay, was an admission that plaintiff had elected to accept the price, and raised a presumption that he had turned over the property; and that, with no further evidence, the testator's estate should have been held liable for the balance due on the contract.

*Appeal from Jasper District Court.*—HON. D. RYAN. Judge.

FILED, OCTOBER 11, 1889.

THE plaintiff sought the establishment of a claim against the estate of S. C. Cook, deceased. From the action of the district court in refusing the claim, the plaintiff appeals.

*Winslow & Varnum,* for appellant.

*Clements & Ward* and *Meredith & Ogg,* for appellee.

GRANGER, J.—The following is a copy of the claim as filed by plaintiff, except the verification

"The estate of S. C. Cook to R. A. Sankey,
                                                        *Dr*

    March 5, 1886, amount of note,......$2,700 00
    Credits.................................  590 00
        Balance.........................$2,110 00

"Interest at eight per cent. from March 5, 1886."

(COPY OF CLAIM.)

"NEWTON, IOWA, March 5, 1886.

"This agreement, made this day by and between R. A. Sankey and S. C. Cook, witnesseth that R. A. Sankey has advanced and paid into a stone quarry at Ollie, in Keokuk county, $2,362.80, and has put into what is termed the 'Anderson property' $232.96, and the same has been invested for a year or more, without interest; and S. C. Cook proposes to take the same off R. A. Sankey's hands. Now, this agreement witnesseth that S. C. Cook agrees, in case R. A. Sankey so elects, to take said property off his hands; and pay therefor twenty-seven hundred dollars as follows: Two hundred dollars, December 1, 1886; and five hundred dollars, June 1, 1887; and five hundred dollars, December 1, 1887; five hundred dollars, June 1, 1888; and one thousand dollars, December 1, 1888; with eight per cent. interest from this date.         S. C. COOK.

"One hundred and seventy-five dollars paid on the above March 5, 1886; three hundred and fifteen dollars paid June 1, 1886, by purchase of law books; one hundred dollars paid on this agreement July 15, 1886, by purchase of safe."

For the purposes of this case on the trial the answer of the defendant is a denial of the allegations of the claim or of any liability thereon. The issues were sent to a referee, who returned the following findings, except as to the first, which is a copy of the claim above inserted: "(2) It appears that on and after the twenty-ninth day of March, A. D. 1886, plaintiff held a note or contract against S. C. Cook for twenty-seven hundred dollars, and upon this note or contract payments were made by S. C. Cook, and received by the

Sankey v. Cook.

plaintiff, during the spring and summer of A. D. 1886, in sums of one hundred and seventy-five dollars, three hundred and fifteen dollars and one hundred dollars. The character of this note or contract upon which said payments were made and received is not shown, excepting that it was for twenty-seven hundred dollars. (3) No communications were ever had between the plaintiff and S. C. Cook regarding the proposition made by S. C. Cook to the plaintiff on the fifth day of March, A. D. 1886, or regarding the said note or contract for twenty-seven hundred dollars, other than communications by letter. (4) Whether the plaintiff held any other agreements or contracts against S. C. Cook during the year A. D. 1886, for the payment of twenty-seven hundred dollars, does not appear from this evidence. (5) I find that no letter was ever written to S. C. Cook by the plaintiff containing an unqualified acceptance of his proposition of March 5, 1886; neither was any letter ever written to S. C. Cook by the plaintiff, distinctly referring to said proposition in unequivocal and unambiguous language. (6) It is not shown that any of the property of the plaintiff mentioned in said proposition of March 5, 1886, has ever been delivered, transferred or conveyed in any manner to S. C. Cook or to his estate. Neither is it shown that the plaintiff is ready and willing to deliver or transfer said property, or to perform the part of said agreement incumbent upon him in case he has accepted said proposition. Neither is any reason assigned or shown by the plaintiff why he has not performed, or should not be required to perform, his part of said agreement."

I. It is urged by appellant that upon the uncontradicted facts of the case his claim should have been allowed in the district court. Counsel, as

1. PAYMENT: application: presumption.

introductory to other questions, devote some space in argument as to the character of the instrument on which the claim is based,—appellant regarding it as a "conditional promissory note;" appellee being disposed to treat it as a "written proposition,"—and, reasoning from the name thus given,

they differ as to its legal import. Appellant's theory is that, upon his election, the undertaking of Cook to pay became absolute; that of appellee is that the instrument imports but an offer to buy the property mentioned, and, as we understand, that something more than a mere election is necessary to fix the liability of Cook. With the undisputed facts of the case, we think it unnecessary to settle this disputed point as to construction. It must be conceded that Cook agreed to pay the twenty-seven hundred dollars, if plaintiff should elect to complete the contract; and, if necessary, let it be conceded that, in making the election, he must turn the property over, or do some other act as understood by the parties. What are the facts? The referee finds that Cook paid to plaintiff the items one hundred and seventy-five dollars, three hundred and fifteen dollars, and one hundred dollars, which correspond exactly with the items of endorsement on the claim filed. See finding 2. From the concluding sentence of this finding we infer that the referee does not find as a fact that this particular twenty-seven-hundred-dollar contract is the one on which the parties contemplated payments. In this respect we think the referee exercised an unwarrantable caution as to the facts of the case. All the evidence in the case as to these payments consists of letters between the parties, which are in evidence, and unquestioned, and to our minds they show conclusively that the payments were by both parties designed for the contract in suit. There is no pretense whatever of the existence of any other twenty-seven-hundred-dollar transaction, or any other transaction that could have been intended in place of this. The correspondence between the parties refers to a "July note," and to another instrument; the plaintiff referring to it as a "note" or "instrument;" and Cook as a "contract," which must be the one in question, as the correspondence shows it to be a note or contract for twenty-seven hundred dollars. Is it possible that in judicial proceedings, even where a creditor has deceased, if his administrator should seek to recover on a note

for five hundred dollars, and the debtor should produce the creditor's receipt for a payment on a five-hundred-dollar note, which receipt is of a date when the note was held, with no pretense of any other note in existence, and with no facts to contradict it, the court may avoid the plea of payment on the supposition or thought that there might be another five-hundred-dollar note? The identity of the instrument is in no sense in dispute. It is as certain as practical affairs among men can be, and under the undisputed facts it should be considered the instrument on which the payments were designed. If the referee had so found, as was his duty, we think the balance of the record would have been different.

II. Treating these payments as designed for the contract in suit, do the facts as found or undisputed show such an election by the plaintiff as to create an obligation on the part of Cook to pay? Taking the finding (2) of the referee, so modified as to fix the identity of the instrument, and we have the undisputed fact that after the execution of the contract Cook made, and the plaintiff received, three different payments, aggregating five hundred and ninety dollars. Looking to the instrument itself, and it appears that "Cook agrees, in case R. A. Sankey so elects, to take said property off his hands, and pay therefor twenty-seven hundred dollars." The payments by Cook are an unmistakable acknowledgment of his obligation to pay. If the obligation of Sankey was to elect and turn over property, the fact of the payments establishes a presumption of compliance, and this presumption is in no manner overcome, or in fact sought to be, by evidence. A brief reference to the correspondence will show how conclusive the question is, as treated by the parties. The instrument is dated March 5, 1886. The same month Cook writes the plaintiff at Wichita, Kansas, offering to sell him books, safe, etc., for six hundred and seventy-five dollars, and to take up the July note, and have balance applied on the contract. May 7, Cook writes, informing Sankey that he has sold part of the books, and asking an offer for the balance.

2. CONTRACT: acceptance of proposition: evidence.

May 11, Sankey writes from Wichita, as follows: "*Dear Cook:* Yours of the seventh instant has been received. I note what you say in reference to the law books you speak of, and will submit you the following offer." Here follows an offer for certain books, and then he adds: "Provided you will at once box and put on the cars, free of charge, and will credit one hundred dollars of it on your July note, balance on your other note. You must let me know if you accept the offer, soon, as I have some other propositions submitted to me. It takes more abstract books here than in Jasper county,—just about as many more. For this reason I cannot use the safe. I will, however, see if I can find a purchaser for it for you among some of the lawyers here." May 13, Cook again writes, and the following correspondence is had: "*Dear Sankey:* Yours eleventh just received. I will box and ship the books mentioned to-morrow. Credit one hundred dollars on the note due July, 1886, and the balance—$315—on the contract, to apply on first payment. Please also credit the one hundred and seventy-five dollars of the check of 1885." The plaintiff further offered in evidence a letter of R. A. Sankey to S. C. Cook, dated Wichita, Kansas, May 17, 1886, and it is as follows: "*Dear Cook:* Your letter stating you would pack and ship the books last Friday has been received. On their receipt, will make the credit as you suggest. I credited the one hundred and seventy-five dollars long ago as of the date of the note. The note, with this credit, will stand as follows: Amount of note, twenty-seven hundred dollars; credit, one hundred and seventy-five and three hundred and fifteen dollars, four hundred and ninety dollars; total, twenty-two hundred and ten dollars. If you can send me two thousand dollars within the next thirty days, I will accept it as full payment, and return it to you. What do you say? I do this because it will help you out somewhat, and I can make the discount by investing in property here." The plaintiff further offered in evidence a letter which is admitted to be in the handwriting of Cook, and signed by him, dated Newton, Iowa, May 17, 1886, as follows: "*Dear Sankey:* Yours

seventeenth received, but court coming on prevented it. I cannot raise the money now to accept your proposition on the contract." The plaintiff further offered in evidence a letter, which it was admitted is in the handwriting of Cook, and signed by him, dated Newton, Iowa, March 19, 1886, as follows: "*Dear Sankey:* I finally got the books shipped to-day." The plaintiff further offered in evidence letter of Sankey to Cook, dated Wichita, Kansas, June 16, 1886, as follows: "*Dear Cook:* If you can furnish me the safe on the cars to this point I will credit you one hundred dollars on your agreement; that is, laid down at the depot in Wichita, freight paid, for one hundred dollars." The plaintiff further offered in evidence letter of Sankey to Cook, dated Wichita, Kansas, July 15, 1886, as follows: "*Dear Cook:* The safe has come to hand all right, and I have credited one hundred dollars on your agreement in payment therefor, as per our contract." Comment must be unnecessary to show that both parties were treating this obligation as binding on the part of Cook. Under an offer of discount by Sankey, when Cook could not pay, he makes no question of his obligation, and makes additional payments. In such a case, tried to a jury, there would be no question of fact for it. It would be the duty of the court to instruct that the estate was liable on the claim. Conceded or undisputed facts in the record are as binding on the court as the findings of the referee, and are to be considered by the court in pronouncing judgment.

With our holding as to the identity of the instrument, and the practically conceded liability of the estate, it is not necessary to consider the other findings or points presented by argument, as these are controling. The referee, because of his finding as to the liability of the estate, did not consider the counter-claim filed by the estate, as the estate asked judgment on the counter-claim merely to offset any allowance made on plaintiff's claim. We think the plaintiff's claim should be regarded as established, with an opportunity in the district court for an adjudication of the counter-claim

REVERSED.